

William James Shoop # 2948958
Theo Lacy Facility
Section For The Gifted (P. 43.1)
501 The City Drive South
Orange Co 92868
In Pro Se

United States District Court
Central District of California

William James Shoop
                    Plaintiff

        V.

Orange County Sheriffs Department, Et Al.
                    Defendant(s)

Case No. SACV19-547-MWF(SK)
Civil Rights Complaint
Pursuant To 42 U.S.C.
Sub Section 1983

Jury Trial Demanded

I.  Jurisdiction

**RECEIVED**
3-18-19

1.        What Follows Is a Civil Rights Action Auth-
orized By 42 U.S.C. Sub Section 1983 To Repress
The Deprivation Under Color of State Law, of Rights Secu-
red By The United States Constitution. This Court Has
Jurisdiction Under 28 U.S.C. Sub Section 1331 and 1343
(A)(3) Plaintiff Seeks Declaratory Relief Pursuant To
28 U.S.C. Subsection 2201 and 2202. Plaintiffs Claims

Page 1 of 50

For Relief Are Authorized By 28 U.S.C. Sub Section 2283, 2284, and Rule 65 of The Federal Rules of Civil Procedure. This Complaint Alledges That The Civil Rights of The Plaintiff, Who Presently Resides At Theo Lacy Facility, 501 The City Drive South, Orange California 92868, Were Violated By The Actions (And Omissions) of The Defendants Named Below, Actions Which Where Directed At The Plaintiff While In Custody of The Orange County Sheriffs Department At The Orange County Jail In The Citys of Santa Ana and Orange.

## II. Venue

2.      The Central District of California Is An Appropreate Venue Under 28 U.S.C. Subsection 1392 (B)(2) Because It Is Where The Events Giving Rise To This Claim Occured.

## III. Plaintiff

3.      William James Shoop, Is and Was, At All Times Mentioned Herein A Pre-Trial Detainee In The State of California, In The Custody of The Orange County Sheriffs Department (OCSD) and Is Currently Confined In The Orange County Jail, Theo Lacy Facility Module "P" Sector 43 Cell 1 In The City of Orange. Hereafter At All Times Mentioned As Plaintiff.

## III. DEFENDANTS

4.    Each Defendant Is Sued Individually and In His or Her Official Capacity. At All Times In This Complaint Each Defendant Acted Under The Color of Law.

5.    Defendant, Sandra Hutchens Was, At The Time of The Events Giving Rise To This Claim, The Sheriff - Coroner of The County of Orange, and Was The Chief Policy Maker For OCSD and Therefore, Responsible and Liable For Actions (and Omissions) of The Department and Its Members.

6.    Defendant, Donald Barnes Was, At The Time of The Events Giving Rise To This Claim, The Under-Sheriff of The County of Orange and Is Now The Current Sheriff - Coroner of The County of Orange and Is Now The Chief Policy Maker For OCSD And Therefore Responsible and Liable For Actions (and Omissions) of The Department and Its Members.

7.    Defendant, Anthony Rackauckas, Was At The Time of Events Giving Rise To This Claim, The District Attorney of The County of Orange and Chief Policy Maker For The Orange County District Attorneys Office (OCDA) Therefore Responsible and Liable For Actions (and Omissions) of The Office and Its Members.

8.           DEFENDANT, TODD SPITZER IS THE DISTRICT ATTORNEY FOR THE COUNTY OF ORANGE AND CHIEF POLICY MAKER FOR THE OCDA THEREFORE RESPONSIBLE AND LIABLE FOR THE ACTIONS (AND OMISSIONS) OF HIS OFFICE AND ITS EMPLOYEES.

9.           DEFENDANT, CHRISTOPHER ALEX IS A DEPUTY DISTRICT ATTORNEY WITH THE OCDA, HEAD OF THE PROSECUTION TEAM IN THE PLAINTIFFS CRIMINAL MATTERS IN WHICH OCSD, WILLIAM BEEMAN, AND ADAM TREANOR ARE DIRECT MEMBERS, AND THEREFORE RESPONSIBLE AND LIABLE FOR BOTH, HIS ACTIONS (AND OMISSIONS) AND THOES OF HIS PROSECUTION TEAM AND ITS DIRECT MEMBERS.

10.          DEFENDANT, KEVIN NAVARRO IS A LIEUTENANT WITH THE OCSD WHO SUPERVISES THE CUSTODY INTELLIGENCE UNIT (CIU) AND IS RESPONSIBLE FOR BOTH HIS ACTIONS (AND OMISSIONS) AND THOES OF HIS UNIT AND ITS MEMBERS.

11.          DEFENDANT, RYAN DIERCKMAN IS A SERGEANT WITH THE OCSD WHO SUPERVISES THE CIU AND IS RESPONSIBLE AND LIABLE FOR BOTH HIS ACTIONS (AND OMISSIONS) AND THOES OF HIS UNIT AND ITS MEMBERS.

12.          DEFENDANT, WILLIAM BEEMAN IS AN INVESTIGATOR WITH OCSD SPECIAL OPERATIONS UNIT

AND A MEMBER OF THE PLAINTIFFS PROSECUTION TEAM UNDER D.D.A. CHRISTOPHER ALEX.

13.    DEFENDANT, ADAM TREANOR, IS AN INVESTIGATOR WITH OCSD IN THE CUSTODY INTELLEGENCE UNIT (CIU) AND A MEMBER OF THE PLAINTIFFS PROSECUTION TEAM UNDER D.D.A. CHRISTOPHER ALEX.

14.    DEFENDANT, JASON OWENS IS A MEMBER OF OCSD.

15.    DEFENDANT, MIKE FEW IS A SERGEANT WITH THE OCSD IN THE CUSTODY INTELLEGENCE UNIT (CIU).

16.    DEFENDANT, BLAKE BLANEY IS A DEPUTY WITH THE OCSD AND (IN 2015 AND 2016) A MEMBER OF THE SPECIAL HANDLING UNIT (SHU).

17.    DEFENDANT, DANIEL SOLIS IS A DEPUTY WITH THE OCSD AND (IN 2015 AND 2016) A MEMBER OF THE SPECIAL HANDLING UNIT (SHU).

18.    DEFENDANT, EMAD MITRY IS AN INVESTIGATOR WITH THE OCSD.

19.    DEFENDANT, ERIC GUMMIO IS A DEPUTY WITH THE OCSD AND (IN 2015 AND 2016) A MEM

BER OF THE SPECIAL HANDLING UNIT (SHU).

20.     DEFENDANT, JACOB BIEKER IS A DEP-UTY WITH OCSD AND (IN 2015) A MEMBER OF THE SPECIAL HANDLING UNIT (SHU).

21.     DEFENDANT, JEFFERY JENSEN IS AN INV-ESTIGATOR WITH OCSD.

22.     DEFENDANT, JOSEPH FIKEYS IS A MEMBER OF THE OCSD AND (IN 2015) A MEMBER OF THE SPECIAL HANDLING UNIT (SHU).

23.     DEFENDANT, JUSTIN MENESES IS A MEMBER OF THE OCSD AND (IN 2017) A MEMBER OF THE CUSTODY INTELLEGENCE UNIT (CIU).

24.     DEFENDANT, NARINEH MEHRABIAN IS A INVESTIGATIVE ASSISTANT WITH THE OCSD.

25.     DEFENDANT, SAMUEL OKABE IS A MEMBER OF THE OCSD AND (IN 2017) A MEMBER OF THE CUSTODY INTELLEGENCE UNIT (CIU).

## IV.   PRELIMINARY

26.     FOR A PERIOD OF AT LEAST 40 MONTHS, STARTING FEBUARY 2015 AND ENDING JUNE 2018, OCSD

HAS KNOW AND KEPT HIDDEN THE FACT THAT THE O.C. JAILS INMATE COLLECT TELEPHONE SERVICE PROVIDER WAS IMPROPERLY RECORDING PRIVILEDGED ATTORNEY - CLIENT PHONE CALLS BETWEEN INMATES AND THERE COUNSEL, ALLOWING OCSD INVESTIGATIVE ACCESS. AT LEAST 13 MEMBERS OF OCSD ACCESSED THESES CONSTITUTIONALLY PROTECTED CONVENSATION AND NEVER TURNED THEM OVER TO DEFENSE, OR CONTACT THE TELEPHONE SERVICE PROVIDER TO FIX THE ISSUSE OR TOOK ANY ACTION TO PROTECT THE PLAINTIFFS (OR OTHER INMATES) SIXTH AMENDENT RIGHT TO COMMU-NICATE IN CONFIDENCE WITH COUNSEL.

INSTEAD THEY CONSPIRED TO KEEP THE IMPROPER RECORDINGS A SECRET SO AS TO ALLOW FUR-THER INVESTIGATIVE ACCESS ILLEGALLY GAINING PRIVILEDG-ED INFORMATION, (SUCH AS DEFENSE STRADEGY) TO ASSIST IN PROSECUTION UNTIL THEY WERE CAUGHT RED HANDED IN JUNE OF 2018 DURING LITIGATION IN A SUPERIOR COURT CASE (PEOPLE V. WARING).

HAVING BEEN CAUGHT, OCSD SOUGHT TO DOWN PLAY AND MISLEAD THE PLAINTIFF (AND LIKELY COUNTLESS OTHER INMATES) BY RELEASING BLATANTLY FALSE DOCUMENTS AND HIDING THE FACT THAT OCSD, MEMBERS OF HIS PROSECUTION TEAM, WORKING DIRE-CTLY FOR THE OCDA. KNOWINGLY AND PURPOSEFULLY ACCESSED (MULTIPLE TIMES), DOWNLOADED, AND

Even Burned To A Disc 4 Priviledge Phone Calls Between The Plaintiff And His Defense Team For A Period Of 23 Months Lasting All The Way Through Trial, Twelve Seperate Times.

Niether OCSD Or OCDA Disclosed This Information And To The Contrary, Has Gone To Great Length To Keep Theses Facts In The Dark Until Plaintiff Counsel Subpoenaed The Inmate Telephone Service Provider And The Records Showing The Ugly Truth.

## V. Statement Of Facts

### Introduction And History

27.      The OCSD Has A Long History To Consider On The Subject Of The Violation Of The Constitutional Rights Of Thoes Intrusted To Its Custody While Awaiting Theire Day In Court In The Orange County Jail System. The Court May Recall What Has Become Known As The "Snitch Scandal" In Which OCSD Employed An Illegal Informant Program Operated Out Of The Jail. Guided By William Beeman, Deputies Of The Special Handeling Unit (SHU) Used Informants To Illegally Gather Statements From Criminal Defendants Who Were Already Represented By Counsel Violating The Sixth Ammendme-

NT In order to further Prosecution for the OCDA.

This Informant Program was brought to Light in Superior Court Case People V. Dekraai and as a result the OCDA was recused and several OCSD Members Purjured themselves while others Plead the Fifth. The A.C.L.U. Has Raised this issue with this Very Court.

The Mess Created by the Uncovering of this Decades old Illegal Informant Program was Very Quickly Swept Under the Rug. Instead of a House Cleaning OCSD used Symmantics by renaming the Unit responsible for the Informant Program In 2017 to the Custody Intellegence Unit (Formerly the Special Handling Unit) while assuring the Public and Courts the Informant Program was the work of a Few "Rouge Deputies" and that the Constitutional Rights of those In Its Custody Were again Safe. (However Proof Will be Shown herein that the Violations Giving Rise to this Claim Ran Seamless between the Special Handling Unit and Its New Incarnation)

OCSD, a Department With No Real oversight and a Very Political and Unhealthy Relationship with the OCDA. The Special Handling Unit, even Before Litigation Was Done In People V. Dekraai

Reguarding Their Violation of the Sixth Ammendment with use of Informants, Began Accessing Impropperly Recorded Attorney-Client Calls For Investigative Purposes, Even After the Cerimonial Renaming of the Unit, The Custody Intelligence Unit, Eager to Bear Their Collective Chest As They Continued to Trample the Rights of the Accused For the Benefit of the OCDA with out Any Real Fear of Consequence... Until the Truth Again Surfaced In Another Superior Court Case (People V. Waring).

No Longer Able To Conceal The Shocking Fact That While Acting As Members of OCDA Prosecution Team OCSD Were Infact Spying on Attorneys and Their Clients, OCSD Released Several Blatantly Fake Documents To Minimize The Scope of The Violation, and Insinuating That The Problem Was Due To "Human Error" on The Part of The Telephone Provider. In An Attempt To Decieve The Courts, The County, and The Plaintiff and His Legal Team.

However As Will Be Shown Below, Despite OCSD's Efforts To Hide The Fact That OCSD Violated The Plaintiffs Right To Confidential Communication With Counsel, A Subpoenaed Document From The Inmate Tele-Communication Provider Shows They Accessed and Listened To At Least Several Calls The Plaintiff Has Made To His Defense Team Several Times. Downloading Multiple

Calls and even burning one to a disk.

28.         Global Tele-Link (here after G.T.L.) is and has been the exclusive provider of collect telephone service for inmates making calls from O.C. Jail.

29.         In January of 2015, pursuant to a new contract with the OCSD, G.T.L. installed a new platform for OCSD to use while monitoring calls (for penological purposes).

30.         This new platform added several invaluable investigative tools which law enforcement desired and generally revamped the entire system.

31.         I am informed and believe it was during this software update OCSD learned they had the ability to improperly record and access attorney-client calls by removing attorneys numbers from a "Do Not Record" list.

32.         Among changes, inmates were given PIN numbers constituting of a booking number and a four digit pass code which allows authorized OCSD personnel to download, search, store, and access data based on the PIN number the inmate uses to make the collect call.

33.      Since his arrest on July 14 2016 the Plaintiff has used the PIN number: 2948665 with a passcode of 1503 to make collect calls. This PIN does not correspond to Plaintiffs booking number because Plaintiffs booking number wouldn't work. This is a common problem with the system.

34.      OCSD has been aware of the Plaintiffs use of the above PIN code and have listened to, downloaded and discovered every (non-privilege) phone call the Plaintiff has made since July 14 2016 in his pending criminal matters.

35.      Another Investigative tool which was added with the software update, and pertinent to this complaint is a feature described in G.T.L.'s contract with OCSD and the county of Orange as "Reverse Look up... Searches a large Industry Data Base for billing name and address of the phone number the Inmate is calling and displays along with billing name and address, a street map or satellite Image."

36.      The System also has options for certain values such as Name, Number, and Addresses to be checked against Public Record.

37.      Thus before authorized OCSD personnel access any specific call they know which Inmate made

Page 12 of 56

THE CALL (REFRENCE THE PIN) AND WHO, WHERE, AND WHAT THE CALL WAS MADE TOO (REFRENCE THE BILLING NAME AND ADDRESS, AND PUBLIC RECORD).

38.    THEREFORE THE ACCESSING OF AN ATTORNEY-CLIENT PHONE CALL ON THE G.T.L. PLATFORM COULD NOT BE RESONABLY BE LABLED AN ACCIDENT OR EVEN NEGLIGENCE, BUT A BLATANT DISREGUARD FOR STATE LAW AND A CALLOUS INNIFFERENCE TO THE CONSTITUTION OF THE UNITED STATES.

39.    THE PLAINTIFF'S SIXTH AMENDMENT RIGHT TO COMMUNICATE IN CONFIDENCE WITH COUNSEL HAD ATTACHED LONG BEFORE HE WAS ARRESTED IN JULY OF 2016 AS HE WAS ON BAIL ON A CASE SINCE 2015 AND HAS BEEN REP-RESENTED BY THE SAME COUNSEL (MARK FREDRICK) IN ALL HIS CRIMINAL MATTERS SINCE 2015.

40.    OCSD, AND MORE SPECIFICALLY WILLIAM BEE-MAN AND ADAM TREANOR WERE ALSO AWARE THAT THE PLAINTIFFS SIXTH AMENDMENT RIGHT HAD ATTACHED AS THEY ARE BOTH INVESTIGATORS ON THE 2015 CRIMINAL MATTER AND ALL CRIMINAL MATTERS PLAINTIFF HAS HAD UNDER D.D.A. CHRISTOPHER ALEX.

41.    CALIFORNIA PENAL CODE SUB SECTION 636 (A) STATES: "EVERY WHO, WITHOUT PERMISSION FROM ALL PARTIES TO THE CONVERSATION, EAVES DROPS ON OR RECORDS BY MEANS OF AN ELECTRONIC DEVICE A CONVERSATION OR

Any Portion Thereof Between A Person Who Is In Custody Of A Law Enforcement Officer Or Other Public Officer, Or Who Is On The Property Of A Law Enforcement Agency Or Other Public Agency, And That Persons Attorney Is Guilty Of A Felony."

42.     There Are Several Other Statutes Which Addresses The Attorney Client Privledge Such As The Business And Proffesional Code Subsection 6068 (E)(1) And Evidence Code Subsection 954 Which Protects The Sixth Ammendment Right To "Confide And Confer With One Having Knowledge Of Law And Skilled In Its Practice."

43.     A Reasonable Person (Not To Mention A Member Of Law Enforcement Assisting In Prosecution) Would Be Aware Of Theses Statutes And The Rights Afforded The Accused By The Constitution Of The United States.

44.     According To Documents Released By OCSD Containing Data From G.T.L, OCSD Has Been Aware Of The Improper Recordings Of Privledge Communication Allowing Investigative Access, Since Febuary 17 2015.

45.     On Febuary 17 2015, Roughly A Month After The G.T.L. Software Update OCSD Information Specialist Teresa Gaulin Accessed, For The First Time, 3

Calls To Phone Numbers Associated With The Orange County Alternate Defenders Office. Gaulin Is Not A Sworn Deputy.

46.    Approximately One Hour Later An Individual Reference In The Documents Only As "CNS Joe Joseph" Accessed 2 Calls To Attorneys Offices. "Joe Joseph" Is Niether A Sworn Deputy Or An Employee With OCSD (Per Transparent (California)

47.    After Feburary 17 2015 Niether Teresa Gaulin Or "CNS Joe Joseph" Accessed Calls Again.

48.    Six Days Later On February 23 2015 A G.T.L. Tech And Liason To OCSD And The Special Handling Unit Named Larry Coleman Accessed Another Privilerge Communication.

49.    One Hour After The G.T.L. Tech Accessed The Call The First Sworn Deputy, Deputy Blake Blaney Accessed An Improperly Recorded Attorney - Client Call For Investigative Purposes.

50.    On Feburary 23 2015 Both OCSD And G.T.L. Were Aware That Theire System Was Improperly Recording Attorney - Client Communications Allowing Investigative Access Violating State Law And The Con- Stitution To The United States And Did Nothing To

Fix The Problem or Notify Any one. Instead Conspired With Knowledge and Intent To Hide Theses Improper Recordings From Defense Teams and Their Defendants While Allowing Them To Gain Defense Stradegy and other Privileged Information In order To Further Prosecution Efforts.

51.　　　OCSD Sergeant Mike Few Testified Under-Oath (On Febuary 13 2018 In People V. Waring) That If An Attorney Call Is Discovered During The Monitoring of An Inmates Calls (For Penological Purposes) Deputies Are Instructed To Immedeately Minimize or Stop Listening and Report It To A Supervisor Then That Number Would Then Be Reported To G.T.L. To Be Put on The "Private" List or The "Do not Record" List.

52.　　　Sergeant Few, Who Supervises The Custo-Dy Intellegence Unit, Said He Could only Recall Two Seperate Occasions Where a Number Was Added To A List So As Not To Allow Further Recording. Acknowledging That The Problem Could Have Easily Been Fixed, And That OCSD Has A Policy Reguarding The Protection of The Attorney - Client Privilege Which Has All But Been Disreguarded. In Favor of Systemic Cheating.

53.　　　Dloke Blaney Was A Deputy With The Special Handling Unit In 2015 and 2016. During The Period Between Febuary 2015 and July 2018, Accessed

NUMEROUS ATTORNEY-CLIENT CALLS FOR INVESTIGATIVE PURPOSES AND WAS THEREFORE AWARE OF THE PROBLEM, SHOWING A CALLOUS INDIFFERENCE BY DOING NOTHING TO RECTIFY THE SITUATION (SUCH AS NOTIFY A SUPERVISOR). CONSPIRING BY ACT AND OMISSION TO ALLOW THE IMPROPER RECORDINGS (ALLOWING INVESTIGATIVE ACCESS) TO CONTINUE LEADING TO THE RECORDING AND ACCESSING OF PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

54.    DANIEL SOLIS WAS A DEPUTY WITH THE SPECIAL HANDLING UNIT IN 2015 AND 2016. DURING THE PERIOD BETWEEN FEBUARY 2015 AND JULY 2018 HE ACCESSED NUMEROUS ATTORNEY-CLIENT CALLS FOR INVESTIGATIVE PURPOSES AND WAS THEREFORE AWARE OF THE PROBLEM, SHOWING A CALLOUS INDIFFERENCE BY DOING NOTHING TO RECTIFY THE SITUATION (SUCH AS NOTIFY A SUPERVISOR). CONSPIRING BY ACT AND OMISSION TO ALLOW THE IMPROPER RECORDINGS (ALLOWING INVESTIGATIVE ACCESS) TO CONTINUE LEADING TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

55.    EMAD MITRY WAS AN INVESTIGATOR WITH OCSD IN 2015. DURING THE PERIOD BETWEEN FEBUARY 2015 AND JULY 2018 HE ACCESSED NUMEROUS ATTORNEY-CLIENT CALLS FOR INVESTIGATIVE PURPOSES AND WAS THEREFORE AWARE OF THE PROBLEM SHOWING A CALLOUS INDIFFERENCE BY DOING NOTHING TO RECTIFY THE SITUATION (SUCH AS NOTIFY A SUPERVISOR). CONSPIRING BY ACT AND OMISSION TO ALLOW THE IMPROPER

RECORDINGS (ALLOWING INVESTIGATIVE ACCESS) TO CONTINUE LEADING TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

56.     ERIC GUMMIO WAS A DEPUTY WITH THE SPECIAL HANDLING UNIT IN 2015 AND 2016. DURING THE TIME PERIOD BETWEEN FEBRUARY 2015 AND JULY 2018 HE ACCESSED NUMEROUS ATTORNEY-CLIENT CALLS FOR INVESTIGATIVE PURPOSES AND WAS THEREFORE AWARE OF THE PROBLEM, SHOWING A CALLOUS INDIFFERENCE BY DOING NOTHING TO RECTIFY THE SITUATION (SUCH AS NOTIFY A SUPERVISOR). CONSPIRING BY ACT AND OMISSION TO ALLOW THE IMPROPER RECORDINGS (ALLOWING INVESTIGATIVE ACCESS) TO CONTINUE. LEADING TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY OTHERS).

57.     JACOB BIEKER WAS A DEPUTY WITH THE SPECIAL HANDLING UNIT IN 2015. DURING THE TIME PERIOD BETWEEN FEBRUARY 2015 AND JULY 2018 HE ACCESSED NUMEROUS ATTORNEY-CLIENT CALLS FOR INVESTIGATIVE PURPOSES AND WAS THEREFORE AWARE OF THE PROBLEM, SHOWING A CALLOUS INDIFFERENCE BY DOING NOTHING TO RECTIFY THE SITUATION (SUCH AS NOTIFY A SUPERVISOR). CONSPIRING BY ACT AND OMISSION TO ALLOW THE IMPROPER RECORDINGS (ALLOWING INVESTIGATIVE ACCESS) TO CONTINUE LEADING TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

58.     Jeffery Jensen was an Investigator with OCSD in 2015. During the period between February 2015 and July 2018 he accessed numerous Attorney-Client calls for investigative purposes and was therefore aware of the problem showing a callous indifference by doing nothing to rectify the situation (such as notify a supervisor). Conspiring by act and omission to allow the improper recordings (allowing investigative access) to continue leading to the recording and accessing of the Plaintiffs Attorney-Client calls (and likely many others.)

59.     Joseph Fekejs was a Deputy with the Special Handling Unit in 2015. During the period between February 2015 and July 2018 he accessed numerous Attorney-Client calls for investigative purposes and was therefore aware of the problem showing a callous indifference by doing nothing to rectify the situation (such as notify a supervisor). Conspiring by act and omission to allow the improper recordings (allowing investigative access) to continue leading to the recording and accessing of the Plaintiffs Attorney-Client calls (and likely many others).

60.     Justin Meneses is a member of OCSD with the Custody Intelligence Unit in 2017. During the period between February 2015 and July 2018 he accessed numerous Attorney-Client calls for investigative purposes

and was therefore aware of the problem showing a callous indifference by doing nothing to rectify the situation. (Such as notify a supervisor). Conspiring by act and omission to allow the improper recordings (allowing investigative access) to continue leading to the recording and accessing of the plaintiffs attorney-client calls (and likely many others).

61.     Narineh Mehrabian was an investigative assistant in 2017 with OCSD. During the period between February 2015 and July 2018 he accessed numerous attorney client calls for investigative purposes and was therefore aware of the problem showing a callous indifference by doing nothing to rectify the situation (such as notify a supervisor). Conspiring by act and omission to allow the improper recordings (allowing investigative access) to continue. Leading to the recording and accessing of the plaintiffs attorney-client calls (and likely many others).

62.     Samuel Okabe is a member of OCSD with the custody intelligence unit. During the period between February 2015 and July 2018 he accessed numerous attorney-client calls for investigative purposes and was therefore aware of the problem, showing a callous indifference by doing nothing to rectify the situation (such as notify a supervisor) conspiring by act and omission to allow the improper recordings (allowing investigative

Access) To Continue. Leading To The Recording And Accessing Of The Plaintiffs Attorney-Client Calls (And Likely Many Others).

63.        During Litigation In People V. Waring In Superior Court The Fact That OCSD Was Recording And Accessing Privileged Attorney-Client Phone Calls Was Brought To Light And Attracted Media Attention.

64.        Both OCSD And G.T.L. Publicly Admitted And Acknowledge The Improper Recordings. Stating That The Improper Recordings Were A Result Of "Human Error", That During The Software Update In January 2015, The "Private" And "Do Not Record" Lists Were Not Properly Transferred By G.T.L. Personnel, But They Do Not Admit Or Acknowledge The Fact OCSD Has Been Aware Of This "Human Error" For 40 Months Or That The Accessing Of These Calls Was Not "Human Error" But Lack Of Integrity And A Blatant Violation Of State Law And The United States Constitution.

65.        Along With These Misleading Statements Of "Human Error", OCSD Released A Document (With Data Provided By G.T.L.) Which Stated That In A 40 Month Period 1,079 Attorney-Client Calls Were Improperly Recorded And That O.C.S.D. Personnel (More Specifically Personnel Mentioned In Paragraphs 53-62 And William Beeman) Accessed 58 Of These Calls A Total Of 87

Times.

66.     However this Document has been Shown to be Blatantly False and at very best a Gross Under Statement of the Truth For Several Reasons (For a Detailed Analysis of the Fraudulent Document Please See People V. Weisz. Case No. 18WF0433 Motion To Compel Discovery and Alternatley To Permit Discovery Hearing; Points and Authority In Support Thereof; Exhibits and Declaration of Counsel) But Pertinent To This Complaint, The Fact That The Plaintiffs Attorney Calls Are Not Found Among The Recorded and Accessed Calls Document Will Suffice To Show The Document Is Fraudulent.

67.     Meaning OCSD Purposefully Removed The Plaintiffs Calls From The Document They Released (and Likely Hundreds of others) To Hide The Fact That OCSD Investigators Accessed His Attorney Calls Secretly All The Way Through Trial.

68.     Another Fact Showing This List Released Had Been Scrubbed, Relevant To This Complaint, Is The Fact That Adam Theodoras and James Owens Were Not Among The 13 Names of OCSD Personnel Who Accessed Attorney - Client Calls During The 40 Month Period, Yet There Names Showed up on a Subpoenaed Document From G.T.L.

69.     The Following Month on August 21 2018 Sheriff Sandra Hutchen Wrote An Intra-Department Memo With Knowledge That Members of Both The Special Handling Unit and Custody Intelligence Unit (and Other OCSD Investigators) Had, For Years Been Accessing Improperly Recorded Attorney-Client Calls For Investigative Purposes Violating The Constitution of The United States and State Law. She Wrote In Pertinent Part: "I Do Not Believe Any Department Members Did Any Thing Wrong". A Shocking Statement From Some one Whos Sworn an Oath To Up hold The Law and Constitutional Rights of Those In Her Company.

70.     Also In Sheriff Sandra Hutchen Intra-Department Memo She Instructs He Personnel That "If You Have Access To Any of These Recordings, Contact Lt. Kevin Navarroo At Knavarro@OCSD.ORG For Directions on How To Proceed.

71.     Navarro Is no Doubt, The Best Choice For Ensuring That All OCSD Personnel Provide Information Consistent With Its Blatantly False Recorded and Accessed Calls Documents and Sheriff Hutchens Ignorant Belief That Her Staff "Diont Do Any Thing Wrong" As Kevin Navarroo Is The Lieutenant Who Oversees The Custody Intelligence Unit, The Unit Responsible For The Majority of The Accessed Attorney-Client Calls.

72.        KEVIN NAVARRO WAS A LIEUTENANT WITH THE CUSTODY INTELLIGENCE UNIT IN 2017 AND 2018. DURING THE PERIOD BETWEEN FEBRUARY 2015 AND JULY 2018 HE FAILED TO PROPERLY SUPERVISE AND TRAIN THOES UNDER HIS COMMAND TO NOT VIOLATE THE CONSTITUTIONAL RIGHTS OF INMATES BY ACCESSING ATTORNEY-CLIENT CALLS. HIS NEGLIGENCE LEAD TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

73.        MIKE FEW WAS A SERGEANT WITH THE SPECIAL HANDLING UNIT / CUSTODY INTELLIGENCE UNIT IN 2017 AND 2018. DURING THE PERIOD BETWEEN FEBRUARY 2015 AND JULY 2018 HE FAILED TO PROPERLY SUPERVISE AND TRAIN THOES UNDER HIS COMMAND TO NOT VIOLATE THE CONSTITUTIONAL RIGHTS OF INMATES BY ACCESSING ATTORNEY-CLIENT CALLS. HIS NEGLIGENCE LEAD TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

74.        RYAN DIENCKMAN WAS A SERGEANT WITH THE CUSTODY INTELLIGENCE UNIT IN 2017 AND 2018. DURING THE PERIOD BETWEEN FEBRUARY 2015 AND JULY 2018 HE FAILED TO PROPERLY SUPERVISE AND TRAIN THOES UNDER HIS COMMAND TO NOT VIOLATE THE CONSTITUTIONAL RIGHTS OF INMATES BY ACCESSING ATTORNEY-CLIENT CALLS. HIS NEGLIGENCE LEAD TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY OTHERS).

75.        SANDRA HUTCHENS WAS THE SHERIFF OF

The County of Orange in 2015, 2016, 2017, and 2018. During the period between February 2015 and July 2018 she was the chief policy-maker for the OCSD and failed to properly supervise and train those under her command to not violate the constitutional rights of inmates by accessing attorney-client calls. Her negligence lead to the recording and accessing of the plaintiffs attorney-client calls (and likely many others).

76.     Don Barnes was the under-sheriff in 2015, 2016, 2017, and 2018 (and is now currently serving as the sheriff of the county of Orange). During the period between February 2015 and July 2018 he oversaw the Orange County Jail and failed to properly supervise and train those under his command to not violate the constitutional rights of inmates by accessing attorney-client calls. His negligence lead to the recording and accessing of the plaintiffs attorney-client calls (and likely many more).

77.     During litigation in People v. Waring the OCDA admitted to having received at least 8 attorney-client calls recorded and downloaded by OCSD but did not (until OCSD was caught) investigate the problem or inquire how or why theses calls ended up in there office actions amounting to a "Don't ask don't tell" policy between the two entities.

78.         Assistant District Attorney Susan Price Testified Under Oath on February 13 2018 In People V. Waring That She Had Recieved Improper Recordings of Attorney - Client Communications, While She (of Counsel) Denied Listening To Them. She Also Made No Inquiry Into How They Were Obtained, Who Had Listened To The Recordings (Including OCSD Who Was The Agency In Charge of The Criminal Case A.D.A. Susan Price Was Prosecuting).

79.         Further A.D.A Susan Price Testified She Had Learned Several Witnesses on Her Case May Have Had Their Attorney - Client Calls Recorded and Accessed But She Did Not Make Any Effort To Learn or Determine The Validity Of The Claims, How This Happened or How To Prevent It In The Future.

80.         Denise Hernandez Testified Under Oath on February 13 2018 That As Part of Her Job Investigating "The Attorney - Client Call Issuse" She Notified 8 District Attorneys About 10 Different Calls That Had Been Recorded and Accessed By OCSD Which She Believed Contained Attorney - Client Communications.

81.         During This Period of Time A Fellow Inmate Shared With Me Some Documents Which Had Been Discovered In His Case. Theses Documents Memorialized Minutes of A Meeting Between OCSD and OCDA Rep-

RENCE- THE RECORDING AND ACCESSING OF ATTORNEY - CLIENT CALLS IN THE JAIL.

82.     WILLIAM BEEMAN, ADAM TREANOR, WERE IN ATTENDANCE WITH SEVERAL MEMBERS OF THE OCDA.

83.     PERTINENT TO THIS COMPLAINT, A SIMPLE FACT WAS MEMORIALIZED WITH IN THE MINUTES OF THIS MEETING SHOWING THAT WILLIAM BEEMAN HAD MADE D.D.A. CHRISTOPHER ALEX AWARE, MONTHS PRIOR THAT ATTORNEY - CLIENT COMMUNICATIONS HAD BEEN RECORDED.

84.     THAT WILLIAM BEEMAN IS THE LEAD INVEST- IGATOR ON THE PLAINTIFFS PENDING CRIMINAL ACTION UNDER D.D.A. CHRISTOPHER ALEX THIS FACT WAS NOT DISCOVERED AT THE TIME OF THE EXCHANGE NOR DID D.D.A. CHRISTOPHER ALEX INVESTIGATE THE VALIDITY OF THE ADMISSION, HOW IT HAPPENED OR HOW TO PREVENT IT IN THE FUTURE.

85.     ON OR AROUND NOVEMBER 16 2018, WITH KNOWLEDGE OF THE ABOVE MENTIONED MEETING BETWEEN OCSD AND OCDA, AS WELL AS THE FACT THAT BOTH OCSD INVE- STIGATOR ASSIGNED TO THE PLAINTIFFS CRIMINAL MATTER (WILL- IAM BEEMAN AND ADAM TREANOR) WERE INVOLVED IN THE ACCESSING OF OTHER RECORDINGS OF ATTORNEY - CLIENT CALLS AND DESPITE THE FACT THAT THE PLAINTIFFS CALLS TO HIS ATTORNEY WERE NOT AMONG THE THREE CALLS WHICH OCSD HAD ADMITTED TO RECORDING OR ACCESSING THE PLAINTIFFS

Attorney Subpeonaed From G.T.L. A Document Showing The Plaintiffs Calls To His Defense Team That Had Been Accessed By OCSD, Since His Arrest.

86.     Upon Realization That The Plaintiff Had Subpeonaed The Accessed Call Document, D.D.A. Christopher Alex, On December 7 2018 Authored An Email To Plaintiffs Counsel Stating That He Had Made Both William Beeman and Adam Treanor of The Pending Subpeona and Also Memorialized Their Statements on The Matter. (Attached Here In As Exhibit A).

87.     Adam Treanor Told D.D.A. Christopher Alex That "As Far As He Is Aware, There Are No Calls From Shoop (Plaintiff) To You (Plaintiffs Counsel) That Were Accessed By OCSD" This Statement Was A Blatant Lie.

88.     Adam Treanor Told D.D.A. Christopher Alex That He Did once Encounter A Call Associated With A Defense Investigator, But After Accessing and Listening To Call He Stated He "Began To Suspect" That It Was Privledge Communication and Immedeatly Discontinued Listening. However He Did not Memorialize That Their Software Platform Would Display Business Name and Address Which Would Show The Number To Be That of A Private Investigator.

89.     Adam Treanor Told D.D.A. Christopher Alex That William Beeman Did Access And Listen To A Call Between Shoop (Plaintiff) And (Plaintiffs Counsels Office) But That When He "Realized" It Was A Privileged Communication He "Immediately Discontinued Listening" And Took Steps To Block The Call.

90.     William Beeman Confirmed He Did "Once" Access And Listen To A Call Between The Plaintiff And A Paralegal (Plaintiffs Counsels Office) But That When He "Realized" It Was A Privileged Communication He "Immediately Discontinued Listening." This Would Be Shown To Be A Lie And A Gross Understatement.

91.     In The Same Email William Beeman Said He Had Also Listened To A Portion Of The Plaintiffs Codefendant's (Todd (Schneider) Call To His Counsel (Glenn Osajima) But Again Stated As Soon As He "Realized" It Was A Call To An Attorney He "Immediately Discontinued Listening" And Took Steps To Block The Call And To Notify Glenn Osajima Via The Custody Intellegence Unit.

92.     Glenn Osajima Responded To The Email Stating He Was Not Notified By OCSD Or The Custody Intercept Unit (Attached Herein As Exhibit B).

93.     In The Email Containing Both Statements From William Beeman And Adam Treanor, Both Agent

They were unaware upon accessing of said call that it was an attorney-client communication however as has been stated the software platform OCSO uses (Inmate Calling Manager) displays business name and address and checks it against a national data base for other relevant info. Meaning the Inmate Calling Manager would show "Law Offices" or "Defense Investigator"

94.    When the paralegal answers the phone (Before transfering me to my attorney) she says Law Offices there for branding the call.

95.    Both William Beeman and Adam Treanor have testified underneath, and at length to there proficency with the C.T.L. System.

96.    I am informed and believe, due to the totality of circumstances that OCDA has long been aware of OCSO's ability to secure, record and access attorney-client calls and have failed to address the situation, by instructing members of OCSO to disclose the calls they had recorded and accessed, or proprenly investigated the issuse.

97.    Christopher Alex was a deputy district attorney with the OCDA during 2015, 2016, 2017, and 2018. During the period between February 2015

AND JULY 2018 HE WAS IN CHARGE OF THE PROSECUTION TEAM IN PLAINTIFFS CRIMINAL MATTER. IT IS HIS AFFIRMATIVE OBLIGATION TO UP HOLD THE CONSTITUTIONAL RIGHTS OF THE DEFENDANTS HE PROSECUTES HE FAILED TO DO SO BY NOT PROPERLY SUPERVISING THOES ASSISTING IN THE GOVERNMENTS CASE (OCSD).

98.     ANTHONY RACKAUCAS WAS AT THE TIME OF THE EVENTS GIVING RISE TO THIS CLAIM THE DISTRICT ATTORNEY OF THE COUNTY OF ORANGE IN 2015, 2016, 2017, AND 2018 AND SO THE CHIEF POLICY-MAKER FOR THE OCDA. HE FAILED TO PROPERLY SUPERVISOR AND TRAIN THOES UNDER HIS COMMAND NOT TO VIOLATE THE RIGHTS OF INMATES OR DEFENDANTS BY ACCESSING OR ALLOWING INVESTIGATIONS TO ACCESS ATTORNEY-CLIENT CALLS HIS NEGLIGENCE LEAD TO THE ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS (AND LIKELY MANY MORE).

99.     TODD SPITZER IS CURRENTLY THE DISTRICT ATTORNEY OF THE COUNTY OF ORANGE AND THE CHIEF POLICY-MAKER FOR THE OCDA. THE NEGLIGENCE OF THOES IN HIS OFFICE LED TO THE ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS.

100.    THE RESULTS OF THE PLAINTIFFS SUBPOENAED ACCESS CALL DOCUMENT (ATTACHED HEREIN AS EXHIBIT C) ARE AS FOLLOWS.

101.    On August 18 2016 The Plaintiff Made a Call To His Attorneys Office From Theo Lacy Jail, Module "P", Section 46 (Using The P.I.N 2942 841 To Call 949-756-2200). (Here After Referred To As "Call One").

102.    William Beeman Accessed, Played, and Listened To Call one Several Hours After The Call Was Made on The Same Day It was Made (August 18 2016).

103.    8 minutes After Accessing Call one William Beeman Burned The Call on To An Audio C.D. Likely To Play It For The D.A. and Others Who Would Have An Interest In The Contents of The Privileged Conversation.

104.    Ten Day Later On August 28 2016 Jason Owens Accessed, Played, And Listened To Call One Again.

105.    Two Days After That on August 30 2016 Jason Owens Again Accessed, Played, And Listened To Call One.

106.    On December 8 2016 The Plaintiff Made a Call To His Attorneys Office From Theo Lacy Jail, Module "K", Dis-150 (Using The P.I.N. 2942841 To Call

949-756-2200. (HERE AFTER REFERED TO AS CALL TWO).

107.       WILLIAM BEEMAN, ACCESSED, PLAYED, AND
LISTENED TO CALL TWO MONTHS AFTER IT WAS MADE ON
FEBUARY 22 2017.

108.       ON APRIL 12 2017 THE PLAINTIFF MADE
A CALL TO THE PARA LEGAL WORKING FOR MY ATTORNEY
AT MY ATTORNEYS OFFICE FROM THE O.C. JAIL, INTAKE
AND RELEASE CENTER, SOUTH DIS-150. (USING P.N. 2943668
TO 949-294-5538). (HERE AFTER REFERED TO AS CALL
THREE).

109.       WILLIAM BEEMAN ACCESSED, PLAYED, AND
LISTEN TO CALL THREE SEVERAL HOURS AFTER IT WAS MADE
ON THE SAME DAY IT WAS MADE (APRIL 12 2017).

110.       WILLIAM BEEMAN AGAIN ACCESSED PLAYED AND
LISTENED TO CALL THREE 9 DAYS LATER ON APRIL 21
2017.

111.       WILLIAM BEEMAN, SOME 5 MONTHS LATER
DOWNLOADED CALL THREE TWO SEPERATE TIMES ON
OCTOBER 4 2017. LIKELY TO SEND IN EMAILS TO SOME
ONE WHO WOULD BE INTERESTED IN THE CONTENTS OF A
PRIVILEDGE COMMUNICATION. (I.E: OCDA).

112.       ON APRIL 13 2017 THE PLAINTIFF MADE A

Call to the Para Legal Working for My Attorney at My Attorneys Office. From O.C. Jail, Intake and Release Center, South Dis-150. (using P.I.N 2 943886 To 949-2945538). (Here After Referencd To As Call Four).

113.        Adam Treanor Accessed, Played and Listened To Call Four 3 Weeks Later on May 2 2017.

114.        William Deeman, Some 5 Months Later Downloaded Call Four Two Seperate Times on October 4 2017. Likely To Send In an Email To Some one Who Would Be Interested In The Contents of a Privileged Communication (I.E. OCDA).

115.        William Deeman Accessed The Four Calls 9 Times, Playing 4 Calls, Downloading 4 Calls and Burning one To a C.D.

116.        Adam Treanor Played 1 Call of The Four on The Access Call Document and The one To My Defense Investigator He Admitted To In The Attached Emails.

117.        Jason Owens Played 2 Calls of The Four Calls on The Access Call Document.

118.        Between The Access Calls Document and

THE EMAILS OCSD HAS VIOLATED CALIFORNIA PENAL CODE 636 (A) AND MY CONSTITUTIONAL RIGHTS 13 TIMES.

119. FURTHER PROOF OF CONSCIENCE OF WRONG-DOING AS WELL AS A CONSPIRACY TO CONTINUE TO FACILITATE ACCESS TO THESE IMPROPER RECORDINGS IS FOUND IN THE FACT THAT ALL CALLS THE PLAINTIFF HAS MADE WHILE INCUSTODY SINCE JULY 14 2016 HAVE BEEN DISCOVERED IN CRIMINAL PROCEEDING AT THE REQUEST OF D.D.A. CHRISTOPHER ALEX, EXCEPT THOSE FOUND ON THE SUBPOENAED ACCESSED CALLS DOCUMENT.

118. MEANING WILLIAM BEEMAN AND ADAM TREANOR, WHO PRE-PARE THIS REQUESTED DISCOVERY, TOOK SPECIAL CARE TO INSURE THAT THE ABOVE 4 CALLS DIDN'T END UP IN THE BATCH DISCOVERY TO PLAINTIFFS DEFENSE TEAM SHOWING ACCESS TO THESE CALLS, BUT ALSO TOOK NO STEPS TO STOP THE ILLEGAL AND IMPROPER RECORD-INGS, CHOOSING INSTEAD TO KEEP THEM A SECRET AND CONTINUE TO VIOLATE STATE LAW AND THE PLAINTIFFS CONSTITUTIONAL RIGHTS. (AND COUNTLESS OTHERS).

119. AT THE BEGINNING OF MOST IF NOT ALL OF MY PRIVILEDGE COMMUNICATIONS (BEYOND THE PHONE BEING ANSWERED: "LAW OFFICES"), VISITS OR CALLS, MY ATTORN-EY OR DEFENSE INVESTIGATOR HAS STATED "THIS IS AN ATTORNEY - CLIENT CONVERSATION ANY MONITORING OR RECORDING SHOULD STOP NOW."

120.    I was Informed and Believed That If Theses Calls (or Visits) Where Being Recorded or Monitored It Would Stop After That Warning.

121.    There Are Signs And a Prompt on The Telephone Which Says That Calls "May" Be Recorded and Monitored But I was Not Aware That "All" Call Were Recorded and Monitored.

122.    I was Informed and Believed That All Communication Between and Attorney and Client Are Confidential As A Matter of Law Therefore Law Enforcement Would Honor and Uphold That Law and Not Record or Access My Priviledge Communication.

123.    I Had Also Been Informed By OCSD Personnel and other Inmates who Have Had Exprience With The Workings of The Jail, That OCSD Maintained a List of California Attorneys or Thoses who Have Appeared As An Inmates Attorney of Record So As Not To Record Those Calls.

124.    I Did not and Would Not Give Affirmative Consent, As A Matter of Law, To The Recording and Accessing of My Attorney-Client Calls.

125.    Prosectors and Police Have An Affirmative Obligation Not To Act In a Manner That Circumvents

AND THEREBY DILUTES THE PROTECTION AFFORDED BY THE 6TH AMMENDMENT RIGHT TO COUNSEL.

126. OCSD CUSTODY AND COURTS OPERATION MANUEL (WHICH CONSTITUTES ITS POLICY) STATES, IN PERTINENT PART AT 1904.2 (A)(1): "ALL LEGAL CALLS WILL BE UNMONITORED."

127. OCSD CUSTODY AND COURTS OPERATION MANUEL (WHICH CONSTITUTES ITS POLICY) STATES AT 1904.6 (2) "THE DIVISION COMMANDER OR HIS OR HER DESIGNEE AT EACH FACILITY OR OFFICE SHALL BE RESPONSIBLE FOR ENSURING THAT THE INMATE TELEPHONE RECORDING/MONITORING SYSTEM IS UTILIZED FOR LEGITIMATE LAW ENFORCEMENT NEEDS AND THE SECURITY OF THE FACILITY AS ALLOWED UNDER STATE AND FEDERAL LAWS AND IN COMPLIANCE WITH STATE AND FEDERAL STATUTES (CAL. PEN. CODE SUBSECTIONS 633, 636 (A); 18 U.S.C. SUBSECTION 2511 (1)(A) AND (4), PEOPLE V. KELLEY (2002) 103 CAL. APP. 4TH 853"

## V. EXHAUSTION OF REMEDIES.

128. PLAINTIFF HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES AVAILABLE TO HIM AT THE O.C. JAIL ON BOTH ISSUSES RAISED IN THIS COMPLAINT (CONSPIRACY AND NEGLIGENCE, AND THE ACTUAL VIOLATION OF PLAINTIFFS 6TH AMMENDMENT RIGHTS).

129.        As It Relates To The Actual Accessing Downloading, And Copying Of The Plaintiffs Attorney Calls He Has Exhausted All Remedies Available (Grievance, Grievance Appeal, And Appeal To The Facility Captin) Going Above And Beyond What Is Required The Plaintiff Furthered His Effort To Remedy This Issue By Filing A Letter Of Intention With All Parties (Both Grievances And Letter Of Intention Attached Herein As Exhibit D)

130.        As It Relates To The Conspiracy And Negligence: On Febuary 17 2019 Plaintiff Filed A Grievance Which Was Recieved By Sgt. Buffong On Febuary 18 2019 Returned To The Plaintiff That Same Day Handled (Innapropaately) As An Inmate Message Slip With J.I. # Refrence The Above Grievanced Issue And Not A Seperate And Valid Grievance; Showing He Either Didn't Read It Or Refused To Document It In An Attempt Tward This Complaint. (Grievance Attached Herein As Exhibit E).

131.        Upon Reciept Of Sgt. Buffongs Response He Filed A Grievance Appeal On The Issue On Febuary 18 2019, On Febuary 29 2019 Sgt. Buffong Made Me Aware That I May Not Appeal A Grievance Which Was Handled As A Inmate Message Slip And That He Had "Shredded" My Grievance Appeal Form.

## VI. LEGAL CLAIMS

132.     PLAINTIFF REALLEDGES AND INCORPORATES BY REFRENCE PARAGRAPHS 1 - 132.

133.     DEFENDANT BLAKE BEANEY WAS AWARE THAT THE INMATE TELE - COMMUNICATIONS SYSTEM (G.T.L.) WAS IMPROPERLY RECORDING ATTORNEY - CLIENT CALLS ALLOWING INVESTIGATIVE ACCESS (BECAUSE HE HIMSELF HAD ACCESSED OTHER INMATES ATTORNEY - CLIENT CALLS) AND WAS NEGLIGENT IN THAT HE DID NOTHING TO STOP THE IMPROPER RECORDINGS (OR ACCESS TO THEM) AND THEREFORE CONSPIRED TO ALLOW IT TO CONTINUE WHICH LED TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE SUBSECTION 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH, AND FOURTEENTH AMMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.

134.     DEFENDANT DANIEL SOLIS WAS AWARE THAT THE INMATE TELE - COMMUNICATIONS SYSTEM (G.T.L.) WAS IMPROPERLY RECORDING ATTORNEY - CLIENT CALLS ALLOWING INVESTIGATIVE ACCESS (BECAUSE HE HIMSELF HAD ACCESSED OTHER INMATES ATTORNEY - CLIENT CALLS) AND THEREFORE CONSPIRED TO ALLOW IT TO CONTINUE WHICH LED TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY - CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE SUBSECTION 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH AND

Fourteenth Ammendent To The Constitution Of The United States.

135.     Defendant Emad Mitry Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls Allowing Investigative Access (Because He Him Self Had Accessed Other Inmates Attorney-Client Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow It To Continue Which Led To The Recording And Accessing Of The Plaintiffs Attorney-Client Calls Violating California Penal Code Subsection 636 (A) And The Plaintiffs Rights Under The First, Fourth, Sixth And Fourteenth Ammend-ment To The Constitution Of The United States.

136.     Defendant Eric Grummo Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls Allowing Investigative Access (Because He Himself Had Accessed Other Inmates Attorney-Client Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow It To Continue Which Led To The Recording And Accessing Of The Plaintiffs Attorney-Client Calls Viola-ting California Penal Code 636 (A) And The Plaintiffs Rights Under The First, Fourth, Sixth And Fourteenth Ammenoment To The Constitution Of The United States.

137.       Defendant Jacob Bieker Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls Allowing Investigative Access (Because He Himself Had Accessed Other Inmates Attorney-Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow It To Continue Which Led To The Recording And Accessing Of Plaintiffs Attorney-Client Calls Violating California Penal Code Subsection 636 (a) And The Plaintiffs Rights Under The First, Fourth, Sixth, And Fourteenth Ammendment To The Constitution of The United States.

138.       Defendant Jeffery Jensen Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls Allowing Investigative Access (Because He Himself Had Accessed Other Inmates Attorney Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow It To Continue Which Led To The Recording And Accessing Of The Plaintiffs Attorney-Client Calls Violating California Penal Code Subsection 636 (a) And The Plaintiffs Rights Under The First, Forth, Sixth And Fourteenth Ammendment To The Constitution of The United States.

139.       Defendant Joseph Fikeus Was Aware That The Inmate Tele-Communications System (G.T.L.) Was

Improperly Recording Attorney - Client Calls Allowing Investigative Access (Because He Himself Had Accessed other Inmates Attorney Calls) and Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) and Therefore Conspired To Allow Them To Continue Which Led To The Recording and Accessing of The Plaintiffs Attorney - Calls Violating California Penal Code 636 (A) and The Plaintiffs Rights Under The First, Fourth, Sixth, and Fourteenth Ammendment To The Constitution of The United States.

140.       Defendant Justin Meneses Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney - Client Calls Allowing Investigative Access (Because He Himself Had Accessed other Inmates Attorney Calls) and Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) and Therefore Conspired To Allow Them To Continue Which Led To The Recording and Accessing of The Plaintiffs Attorney - Calls Violating California Penal Code 636 (A) and The Plaintiffs Rights Under The First, Fourth, Sixth and Fourteenth Ammendment To The Constitution of The United States.

141.       Defendant Narineh Mehrabian Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney - Client Calls

Allowing Investigative Access (Because He Himself Accessed other Inmates Attorney Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow Them To Continue Which Led To The Recording And Accessing of The Plaintiffs Attorney Calls Violating California Penal Code Subsection 636 (a) And The Plaintiffs Rights Under The First, Forth, Sixth, And Fourteenth Ammendment To The Constitution of The United States.

142.     Defendant Samuel Okobe Was Aware That The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls Allowing Investigative Access (Because He Himself Had Accessed other Inmates Attorney Calls) And Was Negligent In That He Did Nothing To Stop The Improper Recordings (or Access To Them) And Therefore Conspired To Allow Them To Continue Which Led To The Recording And Accessing of The Plaintiffs Attorney Calls Violating California Penal Code Subsection 636 (a) And The Plaintiffs Rights Under The First, Fourth, Sixth, And Fourteenth Ammendments To The Constitution of The United States.

143.     Defendant Mike Few, A Supervisor of The Custody Intellegence Unit Whos Members Were Aware The Inmate Tele-Communications System (G.T.L.) Was Improperly Recording Attorney-Client Calls (Because

MEMBERS OF THE CUSTODY INTELLIGENCE UNIT WERE RESPONSI-BLE FOR THE MAJORITY OF ACCESSED ATTORNEY CALLS) ALLOW-ING HIS SUBORDINATES INVESTIGATIVE ACCESS. HE FAILED TO ADEQUATELY SUPERVISE OR TRAIN HIS SUBORDINATES WHICH LED TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS AT-TORNEY-CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH AND FOURTEENTH AMMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

144.     DEFENDANT RYAN DIERCKMAN, A SUPERVISOR OF THE CUSTODY INTELLIGENCE UNIT WHOS MEMBERS WERE AWARE THE INMATE TELE-COMMUNICATIONS SYSTEM (G.T.L.) WAS IMPROPERLY RECORDING ATTORNEY-CLIENT CALLS (BECAUSE MEMBERS OF THE CUSTODY INTELLIGENCE UNIT WERE RESPONSIBLE FOR THE MAJORITY OF ACCESSED ATTORNEY CALLS) ALLOWING HIS SUBORDINATES INVESTIGATIVE ACCESS. HE FAILED TO ADEQUATLEY SUPERVISE OR TRAIN HIS SUBORDINATES WHICH LED TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH, AND FOURTEENTH AMMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

145.     DEFENDANT KEVIN NAVARRO, A SUPERVISOR OF THE CUSTODY INTELLIGENCE UNIT WHOS MEMBERS WERE AWARE THE INMATE TELE-COMMUNICATIONS SYSTEM (G.T.L.) WAS IMPROPERLY RECORDING ATTORNEY-CLIENT CALLS (BECAUSE

MEMBERS OF THE CUSTODY INTELLIGENCE UNIT WERE RESPONSIBLE FOR THE MAJORITY OF ACCESSED ATTORNEY CALLS) ALLOWING HIS SUBORDINATES INVESTIGATIVE ACCESS. HE FAILED TO ADEQUATELY SUPERVISE OR TRAIN HIS SUBORDINATES WHICH LED TO THE ACCESSING AND RECORDING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH, AND FOURTEENTH AMMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

146.        DEFENDANT SANDRA HUTCHENS WAS THE CHIEF POLICY-MAKER FOR OCSD AT THE TIME OF THE EVENTS GIVING RISE TO THIS CLAIM. OCSD WAS AWARE THAT THE INMATE TELE-COMMUNICATION SYSTEM (G.T.L.) WAS IMPROPERLY RECORDING ATTORNEY-CLIENT CALLS (BECAUSE PEOPLE IN HER DEPARTMENT HAD BEEN ACCESSING THE CALLS SINCE 2015) ALLOWING INVESTIGATIVE ACCESS. SHE FAILED TO ADEQUATELY ENFORCE POLICY, TRAIN, AND SUPERVISE HER DEPARTMENT WHICH LED TO THE RECORDING AND ACCESSING OF THE PLAINTIFFS ATTORNEY-CLIENT CALLS VIOLATING CALIFORNIA PENAL CODE 636 (A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH, SIXTH AND FOURTEENTH AMMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

147.        DEFENDANT ANTHONY RACKAUCKAS WAS THE CHIEF POLICY-MAKER FOR OCDA AT THE TIME OF THE EVENTS GIVING RISE TO THIS CLAIM. OCDA WAS AWARE THAT THE INMATE TELE-COMMUNICATIONS SYSTEM (G.T.L.)

Was Improperly Recording Attorney - Client Calls At The OC Jail (Because People In His Office Had Been In Possesion Of Theses Improper Recordings Since 2015) Allowing Investigative Access. He Failed To Investigate This, Enforce Policy, Train or Supervise His Office Which Led To The Recording and Accessing of The Plaintiffs Attorney - Client Calls Violating California Penal Code 636 (A) and The Plaintiffs Rights Under Under The First, Fourth, Sixth, and Fourteenth Amm- endments To The Constitution of The United States.

148.        Defendant Christopher Alex Is The Head of The Prosecution Team of which William Beeman And Adam Treanor are Lead Investigators. He Was Aware The Tele - Communications System at OC Jail Was Im- properly Recording Attorney Calls (Because Members of His Prosecution Team Have Been Accessing These Recording Since 2015 and Members of His Office Have Been In Possesion of Theses Improper Recordings Since 2015) Allowing Investigative Access. He Failed To Train or Supervise His Prosecution Team Which Led To The Recording and Accessing of The Plaintiffs Attorney - Client Calls Violating California Penal Code 636 (A) and The Plain- tiffs Rights Under The First, Fourth, Sixth, and Four- teenth Ammenoments To The Constitution of The United States.

149.        Defendant Don Barnes Is The Chief Policy

Maken For OCSD. And At The Time of Events Giving Rise To This Claim Was The Under - Sherriff Who over Saw The Orange County Jail, He Was Aware That The Inmate Tele- Communication System (G.T.L.) Was Improperly Recording Attorney - Client Calls (Because His Department Has Been Accessing Thoes Calls Since 2015) Allowing Investigative Access. He Failed To Enforce Policy, Train or Supervise His Department Which Led To The Recording and Accessing of The Plaintiffs Attorney- Client Calls Violating California Penal Code 636 (A) and The Plaintiffs Rights Under The First, Fourth, Sixth, and Fourteenth Amendments To The Constitution of The United States.

150.        Defendant William Beeman Did Knowingly and Unlawfully Access The Plaintiffs Attorney- Client Phone Calls 9 Times Total. Burning 1 Call To An Audio C.D., Downloading 4 Calls, and Playing 4 others Violating California Penal Code 636 (A) and The Plaintiffs Rights Under The First, Fourth, Sixth, And Four Teenth Amendments To The Constitution of The United States.

151.        Defendant Adam Treanor Did Knowingly and Unlawfully Access The Plaintiffs Attorney- Client Phone Calls 2 Times. Violating California Penal Code 636 (A) and The Plaintiffs Rights Under The First, Fourth, Sixth, and Fourteenth Amendment To The

CONSTITUTION OF THE UNITED STATES.

152.            DEFENDANT JASON OWENS DID KNOWINGLY
AND UNLAWFULLY ACCESS THE PLAINTIFFS ATTORNEY - CLIENT
PHONE CALLS 2 TIMES VIOLATING CALIFORNIA PENAL CODE 636
(A) AND THE PLAINTIFFS RIGHTS UNDER THE FIRST, FOURTH,
SIXTH, AND FOURTEENTH AMMENDMENTS TO THE CONSTITUTION
OF THE UNITED STATES.

153.            THE PLAINTIFF HAS NO PLAIN, ADEQUATE  OR
COMPLETE REMEDY AT LOW TO REDRESS THE WRONGS DESCRI-
IBED HEREIN. THE PLAINTIFFS RIGHTS (AND MANY OTHERS) HAVE
BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE
CONDUCT OF THE DEFENDANTS UNLESS THIS COURT GRANTS THE
DECLARATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF SEEKS.

## VII. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT
ENTER JUDGMENT:

154.            GRANTING THE PLAINTIFF A DECLARATION THAT
THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATE HIS RIGHTS
UNDER THE CONSTITUTION AND THE LAWS OF THE UNITED STATES,
AND

155.            A PRELIMINARY AND PERMANENT INJUNCTION ORDE-
RING OCSD TO CEASE EAVES DROPPING ON ATTORNEY - CLIENT

PHONE CALLS, VISITS, OR CORRESPONDENCE OF ANY KIND, THE PLAINTIFFS OR ANY OTHER INMATE IN THERE CUSTODY AND,

156.    GRANTING THE PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000.00 AGAINST EACH DEFENDANT TOTALING IN $210,000.00 PURSUANT TO CALIFORNIA PENAL CODE 636 (A) SUBDIVISION (H) OF SECTION 1170, AND

157.    GRANTING THE PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $12,500.00 AGAINST WILLIAM BEEMAN, SPECIFIC TO THE 9 ACCESSED CALLS PURSUANT TO CALIFORNIA PENAL CODE 636 (A) SUBDIVISION (H) OF SECTION 1170, AND

158.    GRANTING THE PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $5,000.00 AGAINST ADAM TREANOR, SPECIFIC TO THE 2 CALLS HE ACCESSED PURSUANT TO CALIFORNIA PENAL CODE 636 (A) SUBDIVISION (H) OF SECTION 1170, AND

159.    GRANTING THE PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $5,000.00 AGAINST JASON OWENS, SPECIFIC TO THE 2 CALLS HE ACCESSED PURSUANT TO CALIFORNIA PENAL CODE 636 (A) SUBDIVISION (H) OF SECTION 1170, AND

160.    PLAINTIFF SEEKS PUNITIVE DAMAGES IN THE AMOUNT THIS COURT SEES FIT AGAINST ALL DEFENDANTS.

161.    PLAINTIFF SEEKS A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY, AND

162.     PLAINTIFF SEEKS RECOVERY OF ANY ATTORNEY FEES (IF ONE IS APPOINTED) AND ANY COST IN THIS SUIT, AND

163.     ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER, AND EQUITABLE.

DATED: MARCH 15, 2019

RESPECTFULLY SUBMITTED

X _____

WILLIAM JAMES SHOOP
#2948958
SECTION FOR THE GIFTED (P.43.1)
501 THE CITY DRIVE SOUTH
ORANGE CO. 92868

VERIFICATION

I HAVE WRITTEN AND READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE AND CORRECT; EXCEPT TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND AS TO THOSE, I BELIEVE THEM TO BE TRUE AND CORRECT. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT ORANGE, CALIFORNIA ON MARCH 15, 2019

X _____

WILLIAM JAMES SHOOP

PAGE 50 OF 50

EXHIBIT A



**OFFICE OF THE**
# DISTRICT ATTORNEY
**ORANGE COUNTY, CALIFORNIA**
**TONY RACKAUCKAS**

JIM TANIZAKI
CHIEF ASSISTANT D.A.

JOSEPH D'AGOSTINO
SENIOR ASSISTANT D.A.
GENERAL FELONIES/
ECONOMIC CRIMES

MICHAEL LUBINSKI
SENIOR ASSISTANT D.A.
SPECIAL PROJECTS

JAIME COULTER
SENIOR ASSISTANT D.A.
BRANCH COURT OPERATIONS

SCOTT ZIDBECK
SENIOR ASSISTANT D.A.
VERTICAL PROSECUTIONS/
VIOLENT CRIMES

CHIEF
BUREAU OF INVESTIGATION

JENNY QIAN
DIRECTOR
ADMINISTRATIVE SERVICES

SUSAN KANG SCHROEDER
CHIEF OF STAFF

December 7, 2018

To:       Mark Fredrick
From:   Chris Alex
Re:       William Shoop

Mark. Please be advised of the following and please feel free to contact me if you have any additional questions.

Subsequent to our last pretrial on November 16, 2018, I contacted Detective Michaelsen and Investigators Beeman and Treanor to update them on the status of the case. In pertinent part, I updated them:

- that the judge has not officially ruled but has tentatively indicated that he is going to permit retrial;
- that, in light of that tentative indication, you and I planned to discuss settlement of the case;
- that, as the three investigators who worked thoroughly on the matter, I would welcome their input on whether they viewed as reasonable my inclined disposition of a determinate term of 38 years and 8 months; and
- that you had subpoenaed GTL records reference whether calls to your office were recorded and accessed by OCSD.

The following week, Investigator Treanor contacted me. He informed me that, as far as he is aware, there are no calls from Shoop to you that were accessed by OCSD. He stated that he did once encounter a call associated with a defense investigator and took steps to block that number. Specifically, he stated that prior to trial, he accessed and listened to a portion of one call by William Shoop which was made to a male. While listening to the call, Investigator Treanor began to suspect that the male who Shoop was speaking to was a defense investigator (Farzin). Investigator Treanor stated that he did not listen to the duration of the call and discontinued listening upon suspecting the call recipient was a defense investigator. Investigator Treanor then facilitated contact with GTL to have the investigator's number blocked. He has an email from around April 19, 2018 confirming the block request.

I asked whether there were any other instances involving the Shoop trial where similar action was taken to block numbers. He stated there were, to his knowledge, two instances as described below: one involving a female suspected to be your paralegal, the other involving an alternate number to Glenn Osajima.

First, Investigator Treanor stated that, prior to trial, Investigator Beeman listened to a call from Shoop which was made to a female. During the course of the call, Investigator Beeman began to

suspect the woman was a paralegal, at which time he discontinued listening and facilitated blocking the number. Investigator Treanor did not know when specifically this call and blocking request occurred.

Second, Investigator Treanor stated that, prior to trial, Investigator Beeman listened to a call from Todd Schneider to a male. During the call, Investigator Beeman realized the male was Glenn Osajima, upon which he discontinued listening and facilitated the number being blocked.

I spoke with Investigator Beeman. He is not aware of any calls from Shoop to your office and he has never listened to a call between you and Shoop. Because Shoop never uses his own pin number, Beeman believes it is possible Shoop has made more calls than those OCSD has actually listened to.

Investigator Beeman confirmed that he did once listen to the call between Shoop and a female, and that upon suspecting it was a paralegal, he discontinued listening and facilitated blocking the number. Investigator Beeman does not know specifically when the call was, but believes it was months or possibly a year prior to the trial, based on the fact that it occurred long prior to him learning that "Kim" was the name of a paralegal working for you.

Investigator Beeman also confirmed that he listened to a portion of one Todd Schneider call. The context was as follows: Investigator Beeman received a request from me to copy for discovery all known GTL calls by certain defendants, including Todd Schneider. While burning a disk of the same, he noticed a call he had never heard before to a number he did not recognize. He began listening to the call and recognized Glenn Osajima as the recipient. Upon doing so, he discontinued listening, destroyed the disk, facilitated blocking the number, and contacted the Custody Intelligence Unit to notify Glenn Osajima. Investigator Beeman believes this notification was done by someone in OCSD. Thereafter, he provided me with a CD of all known calls excluding the call to Glenn Osajima.

Three calls in question – one to Farzin, one to Kim, and one to Glenn – are not among the batch calls in the discovery.

I requested Investigators Treanor and Beeman author a supplemental report describing the details and timeline regarding these calls for discovery purposes. They are (and remain) willing to do so. Prior to completing a report with reference to specific documentation, Investigator Treanor's supervisor sought clearance from county counsel to ensure that doing so would not run afoul of Judge Prickett's orders to OCSD reference the special master.

On December 5, 2016, I spoke with county counsel Annie Loo. She stated that, despite his willingness to do so, Investigator Treanor could not provide me with the requested report and documentation because she believed that Judge Prickett's orders precluded doing so. In her view, the proper procedure was for documentation of the calls / blocking to be submitted only to the special master, who would then make any appropriate notifications.

The following day, I conferred with my supervisors, who concurred with me that, notwithstanding county counsel's position, notification should be made via written memo to you.

It is my belief that GTL should have records to corroborate: (1) the blocking of these numbers occurred as indicated; and (2) that GTL should also have records documenting that OCSD has never "searched" or "queried" defense team numbers when attempting to locate jail calls from

Shoop. It is my view, and my supervisors concur, that, at least presently, it would not be appropriate for me to SDT these records from GTL.


Very Truly Yours,

Chris Alex
Deputy District Attorney

EXHIBIT B



OFFICE OF THE

# DISTRICT ATTORNEY

ORANGE COUNTY, CALIFORNIA
TONY RACKAUCKAS

JIM TANIZAKI
CHIEF ASSISTANT D.A.

JOSEPH D'AGOSTINO
SENIOR ASSISTANT D.A.
GENERAL FELONIES/
ECONOMIC CRIMES

MICHAEL LUBINSKI
SENIOR ASSISTANT D.A.
SPECIAL PROJECTS

JAIME COULTER
SENIOR ASSISTANT D.A.
BRANCH COURT OPERATIONS

SCOTT ZIDBECK
SENIOR ASSISTANT D.A.
VERTICAL PROSECUTIONS/
VIOLENT CRIMES

CHIEF
BUREAU OF INVESTIGATION

JENNY QIAN
DIRECTOR
ADMINISTRATIVE SERVICES

SUSAN KANG SCHROEDER
CHIEF OF STAFF

December 7, 2018

To:       Mark Fredrick; Glenn Osajima
From:    Chris Alex
Re:       William Shoop

Mark. Please be advised of the following and please feel free to contact me
if you have any additional questions.

Glenn and I spoke over the telephone today. He confirmed he received a copy of the memo I
emailed you morning. Glenn stated that he has no recollection of anyone notifying him of a blocked
call or blocked number reference Todd Schneider.

Very Truly Yours,

Chris Alex
Deputy District Attorney

EXHIBIT C

| btn | pin | cdate | ctime | completed | dur | calltype | stopcode | private | recorded | accessed |
|---|---|---|---|---|---|---|---|---|---|---|
| 9497562200 | 2942841 | 20160818 | 1407 | 1 | 529 | Collect | Inmate Hungup | 0 | 44 | 1 |
| 9497562200 | 2942841 | 20161208 | 1510 | 1 | 370 | Collect | CP-Hungup | 0 | 39 | 1 |
| 9492945538 | 2943668 | 20170412 | 1052 | 1 | 156 | Prepaid | Inmate Hungup | 1 | 42 | 1 |
| 9492945538 | 2943668 | 20170413 | 1058 | 1 | 84 | Prepaid | Inmate Hungup | 1 | 41 | 1 |

| lcmusername | email | timestamp | identifier | date | time | actiontype | descr |
|---|---|---|---|---|---|---|---|
| William Beeman | wbeeman@ocsd.org | 2017-10-04 13:45:00.090 | 9492945538 | 20170412 | 1052 | 5 | Downloaded call |
| William Beeman | wbeeman@ocsd.org | 2017-10-04 13:45:39.257 | 9492945538 | 20170413 | 1058 | 5 | Downloaded call |
| William Beeman | wbeeman@ocsd.org | 2017-10-04 13:45:00.093 | 9492945538 | 20170412 | 1052 | 5 | Downloaded call |
| William Beeman | wbeeman@ocsd.org | 2017-10-04 13:45:39.260 | 9492945538 | 20170413 | 1058 | 5 | Downloaded call |
| William Beeman | wbeeman@ocsd.org | 2016-08-18 21:30:12.000 | 9497562200 | 20160818 | 1407 | 1 | Played Call |
| William Beeman | wbeeman@ocsd.org | 2016-08-18 21:38:23.223 | 9497562200 | 20160818 | 1407 | 2 | Audio CD |
| Jason Owens | jowens@ocsd.org | 2016-08-28 16:56:03.000 | 9497562200 | 20160818 | 1407 | 1 | Played Call |
| Adam Treanor | atreanor@ocsd.org | 2017-05-02 00:36:18.000 | 9492945538 | 20170413 | 1058 | 1 | Played Call |
| William Beeman | wbeeman@ocsd.org | 2017-04-21 08:42:18.000 | 9492945538 | 20170412 | 1052 | 1 | Played Call |
| Jason Owens | jowens@ocsd.org | 2016-08-30 13:21:45.000 | 9497562200 | 20160818 | 1407 | 1 | Played Call |
| William Beeman | wbeeman@ocsd.org | 2017-02-22 14:19:33.000 | 9497562200 | 20161208 | 1510 | 1 | Played Call |
| William Beeman | wbeeman@ocsd.org | 2017-04-12 19:30:34.000 | 9492945538 | 20170412 | 1052 | 1 | Played Call |

EXHIBIT D

# RECEIVED

FEB 13 2019

**DISTRICT ATTORNEY'S OFFICE
SANTA ANA, CALIFORNIA**

TO:

LEON PAGE
COUNTY COUNSEL
333 W. SANTA ANA BLVD
SANTA ANA CA 92702
ATTORNEY FOR ORANGE COUNTY SHERIFFS DEPARTMENT

FEBUARY 11 2019

FEB 13 2019

(P @1818)

TODD SPITZER
DISTRICT ATTORNEY FOR THE COUNTY OF ORANGE
401 CIVIC CENTER WEST
SANTA ANA CA 92701

RECEIVED
FEB 13 2019
COUNTY COUNSEL'S OFFICE

FROM:

WILLIAM JAMES SHOOP #2948958
THEO LACY FACILITY, SECTOR FOR THE GIFTED (P.43.1)
501 THE CITY DRIVE SOUTH
ORANGE CA 92868
IN PROPRIA PERSONA

REGUARDING:

LETTER OF INTENTION TO FILE A LAW SUIT UNDER 42 U.S.C.
SUBSECTION 1983.

TO THE ABOVE MENTIONED PARTIES, GREETINGS AND
SALUTATIONS. I HOPE THIS MISSIVE FINDS YOU WELL. PLEASE BE
ADVISED AND CONSIDER WHAT FOLLOWS MY LETTER OF INTENTION
TO FILE (IN PRO-SE, FOR NOW) A LAW SUIT UNDER 42 U.S.C.
SUBSECTION 1983 AGAINST TODD SPITZER, JOHN DOE, CHRISTOPHER
ALEX, DON BARNES, KEVIN NAVARRO, RYAN DIERCKMAN, ADAM

PAGE 1 OF 8

Treanor, Bill Deeman, John Doe, John Doe, and James Owens, for there actions and omissions Under the Color of Law, Violating Both State and Federal Law and the Sixth Amendment to the Constitution by Intercepting/Eaves Dropping on Priviledged Communications Between My Defense Team (Attorney, Para-Legal, and Defense Investigator) and My Self While In Custody at the Orange County Jail In order To Further Prosecution Efforts To obtain Convictions.

The Act of Eaves Dropping on and Recording Jail Inmates' Phone Calls To Attorneys With out Permission From All Parties Constitutes a FELONY. (California Penal Code Sub-section 636 (a) " Every Person Who, Without Permission From All Parties To the Conversation, Eaves Drops on. or Records, By Means of An Electronic Device, a Conversation, or a Portion Thereof, Between a Person Who Is on The Property of a Law Enforcement Agency or other Public Agency, and That Persons Attorney, Is Guilty of a Felony..."

"Where The Government Intrudes Into The Attorney-Client Relationship To obtain Priviledge Information, The Sixth Amendment Right To Counsel May Be Violated. This Usually Involes Some Type of Government Misconduct, Such As Infiltrating The Defense By Planting Informants or Intercepting Confidential Communications" (People V. Navarro, (2006) 138 Cal. App 4th 146, 157.)

"The Prosecutor and Police Have An Affir-

mative Obligation NOT to Act In a Manner That Circum-
vents and Thereby Dilutes The Protection Afforded By The
Right To Counsel" ( Boulas V. Superior Court (1986) 188 Cal.
App. 3D Pg. 433, Quoting Maine V. Moulton (1985) 474 U.S.
159, 171.)

An Analysis of The Currently Available Data
Show O.C.S.D., And More Specifically Bill Beeman Have
Know Since 2015 That Calls To Attorneys Were Improperly
Recorded, Allowing Investigative Access. Instead of Notifying
Some one of This Serious Issue, They Conspired With
Global Tele Link Tech; Larry Coleman To Continue To Allow
The Improper Recording While Facilitating Investigative Access
To Further Goals of Prosecution For A Period Lasting At
Least 28 Months Beginning January 28, 2015 and Ending (When
They Were Caught) June 12 2018.

I Have Been In Custody of O.C.S.D. Since
July 14 2016, Represented By Counsel Since Before My
Arrest (Attorney For My Pending Criminal Matters Since 2015
Is Mark Fredrick Case No. 17ZF0001, 15CF2567, and While
Mark Fredrick Has Represented Me In 17CF1583 I am Now
Currently Propria Persona on That Case.) O.C.S.D and More
Specifically Bill Beeman and Adam Treanor Are Members
of The Prosecution Team on all 3 Pending Case Under
D.D.A. Christopher Alex.

In November of 2018 A Fellow Inmate Had

Brought to my attention a document discovered in his case showing documented minutes of a meeting between O.C.S.D. and O.C.D.A. Refrence the recording and accessing of privilege communication. The document, in pertinent part, mentions that Bill Beeman had made D.D.A. Christopher Alex aware months prior that privilege calls had been recorded and accessed. In light of litigation in People V. Waring and documents of the minutes of meeting between O.C.S.D. and O.C.D.A., my attorney subpeonaed the the records of my calls to members of the defense team to see if any calls had been accessed.

Upon realization my attorney had subpeonaed the records, on December 7 2018 D.D.A. Christopher Alex documented, in the form of an e-mail to my attorney, admissions of both Adam Treanor and Bill Beeman to "accidentally" accessing: one call which I made to my attorneys office, one call I made to my defense investigator as well as mentioning accessing a call made by Todd Schnieder (a codefendant in 17ZF0001) to his attorney (these emails are attached herein as exhibit A). While admitting to accessing only these 3 calls they were adament in stating they were aware of no other calls; and upon "realization" theses were privilege calls they immedeatley discontinued listening; and took steps to block further access. The results of the subpeonaed documents from G.T.L. would show that these statements given to D.D.A. Christopher Alex were infact a lie and a gross understatement.

What was not mentioned in the email was the fact O.C.S.D.'s C.T.L. Software Is equipped with an invaluable investigative tool known as "I.C.M." or Inmate Calling Manager. This is described with in the County Contract with G.T.L. As follows: "Reverse Lookup ... Searches a large Industry Data Base For Billing Name and Address (BNA) of the Specified Phone Number and Displays a Name and Address Along with a Street Map or Satellite Image Depending on User Preference" Meaning Bill Beeman and Adam Treanor, who have both testified under oath, and at length, to there proficiency with the G.T.L. System, would not need to listen to calls to "Realize" they were accessing priviledge communications.

On January 25 2019 My Attorney Recieved the Subpeonaed Records From Global Tele Link Showing Calls I made to My Defense Team that had been Accessed (Not Attached herein Do to a Protective Order Reference Judge Pricketts Special Master). The Document Shows Well over a Dozen Calls. Each Accessed Multiple Times, Several Had Been Downloaded and Even Burned To a Disk. Curiously Enough, The one Call Adam Treanor Admitted To Accessing ( to My Defense Investigator) Is Not Among the Calls In The Subpeonaed Accessed Calls Document.

The Accessed Call Document Does Show That O.C.S.D., Bill Beeman, Adam Treanor and James Owens

Did Knowingly and Unlawfully, While Acting Under The Color of Law, Access, Download and Even Burn To a Disc Upwards of A Dozen Priviledged Communications Between My Self and Members of My Defense Team For Investigative Purposes In Furtherance Prosecution, Violating Both State and Federal Law and My God Given Sixth Amendment Right To Communicate Confidentially With Counsel.

Further Proof of Conscieness of Wrong Doing As Well As A Conspiracy To Continue To Facilitate Access To Theses Improper Recordings Is Found In The Fact That All Calls I Have Made While In Custody Have Been Discovered In 172F0001, Except Those on The Suoppeonaed Accessed Calls Document. Meaning, Bill Beeman and Adam Treaner Were Not only Aware What They Were Doing Was Wrong and Illegal But Took Special Care To Insure Theses Calls Did Not End Up In The Batch Calls Given To D.D.A. Christopher Alex To Discover. All The While Continuing To Access Theses Calls For Investigation Purposes In Furtherance of Prosecution While Hiding It From My Defense Team (and Likely Many Defendants) For Two Years and _Through Trial._

As Mandated By The Prison Litigation Reform Act I Have Exhausted All Remedies Available To Me Here With In The O.C. Jail Grievance System With Respect To The Violation of My Sixth Amendment Rights

Page 6 of 8

Seperately on Bill Beeman ( J.I. # 7LO11119/1106), Adam Treanor ( J.I. # 7LO11119/1107) and James Owens ( J.I. # 7LO12 619/1506) on the First Two Levels of the O.C.S.D. Grievance Procedure ( Attached Herein As Exhibit B) I Recieved The Same Unintrested and Blatantly False Response :·" This Incident Is Being Addressed Through The Orange County District Attorney's and Through Your Court Proceedings. You Have Been Issued a Court Order For Non Collect Phone Calls To Your Attorney and/or Investigator That Are Completed on a Non-Recorded Telephone Line That Is Not Serviced Through Global Tele Link To Address This Situation "

Reguardless of the Fact That This Matter May or May Not Be " Addressed By The District Attorney and In My Court Proceedings " Does Not Excuse or Address The The Violation of one of <u>The Most Sacred Tenants of Law</u>, one of <u>The Hallmarks of our Jurisprudence.</u>

Furthermore I Do Not Have a " Court Order To Call My Attorney and/or Investigator " on a Non-Collect Telephone. ( I Do Have a Court Order To Call My Investigation Assigned To Me As a Pre-Per Once a Week ) Nor Do I Believe G.T.L. Is The Problem In This Equation I Find The Response Given Irrelivant, Blatantly False And A Reflection of The Level Care, Concern, And Remorse ( or Lack There of ) For Violating The Rights

AND LAWS THEY HAVE BEEN INTRUSTED TO UP HOLD.

ON FEBUARY 2 2019 I SUBMITTED ALL 3 SEP-
ERATE GRIEVANCES TO THE FACILITY COMMANDER FOR THE FINAL
LEVEL OF O.C.S.D.'S GRIEVANCE PROCEADURE THE RESPONSE WAS
ALMOST IDENTICAL WITH NO REAL EFFORT TO REMEDY THE MATTER
(ATTACHED HEREIN AS EXHIBIT C) ONLY STATING THAT I HAVE NOW
EXHAUSTED THE APPEALS PROCESS AND THEREFORE TRIGGERING THIS
LETTER OF INTENT. AS MY NEXT AVAILABLE AVENUE TO SEEK RELIEF.

TO THE BEST OF MY KNOWLEDGE THE ORANGE
COUNTY DISTRICT ATTORNEYS OFFICE DOES NOT HAVE A GRIEVANCE
PROCEADURE TO ADDRESS THIS ISSUE AND SO PLEASE ALLOW THIS
LETTER AND NOTICE TO REPRESENT A SINCERE AND MEANINGFUL
ATTEMPT TO ADDRESS THIS ISSUE AND SEEK RELIEF BEFORE
FILING WITH THE UNITED STATES DISTRICT COURT OF CALIFORNIA.

IN CLOSING, I DO APPRECIATE YOUR CONCERN AND
TIME IN THIS MATTER, AND WILL EXPECT AND LOOK FORWARD
TO BOTH PARTIES WRITTEN RESPONSE WITHIN 20 DAYS OF
SERVICE OF THIS LETTER. WITH THAT SAID I EXCUSE MY SELF
IN THE SAME FASHION I ENTERED, WISHING YOU WELL.

SINCERELY,
X
WILLIAM JAMES SHOUP
IN PROPRIA PERSONA
FEBUARY 11 2019

PAGE 8 OF 8

EXHIBIT A



**OFFICE OF THE**
# DISTRICT ATTORNEY
**ORANGE COUNTY, CALIFORNIA**
**TONY RACKAUCKAS**

JIM TANIZAKI
CHIEF ASSISTANT D.A.

JOSEPH D'AGOSTINO
SENIOR ASSISTANT D.A.
GENERAL FELONIES/
ECONOMIC CRIMES

MICHAEL LUBINSKI
SENIOR ASSISTANT D.A.
SPECIAL PROJECTS

JAIME COULTER
SENIOR ASSISTANT D.A.
BRANCH COURT OPERATIONS

SCOTT ZWECK
SENIOR ASSISTANT D.A.
VERTICAL PROSECUTIONS/
VIOLENT CRIMES

CHIEF
BUREAU OF INVESTIGATION

JENNY QIAN
DIRECTOR
ADMINISTRATIVE SERVICES

SUSAN KANG SCHROEDER
CHIEF OF STAFF

December 7, 2018

To:       Mark Fredrick
From:   Chris Alex
Re:      William Shoop

Mark. Please be advised of the following and please feel free to contact me if you have any additional questions.

Subsequent to our last pretrial on November 16, 2018, I contacted Detective Michaelsen and Investigators Beeman and Treanor to update them on the status of the case. In pertinent part, I updated them:

- that the judge has not officially ruled but has tentatively indicated that he is going to permit retrial;
- that, in light of that tentative indication, you and I planned to discuss settlement of the case;
- that, as the three investigators who worked thoroughly on the matter, I would welcome their input on whether they viewed as reasonable my inclined disposition of a determinate term of 38 years and 8 months; and
- that you had subpoenaed GTL records reference whether calls to your office were recorded and accessed by OCSD.

The following week, Investigator Treanor contacted me. He informed me that, as far as he is aware, there are no calls from Shoop to you that were accessed by OCSD. He stated that he did once encounter a call associated with a defense investigator and took steps to block that number. Specifically, he stated that prior to trial, he accessed and listened to a portion of one call by William Shoop which was made to a male. While listening to the call, Investigator Treanor began to suspect that the male who Shoop was speaking to was a defense investigator (Farzin). Investigator Treanor stated that he did not listen to the duration of the call and discontinued listening upon suspecting the call recipient was a defense investigator. Investigator Treanor then facilitated contact with GTL to have the investigator's number blocked. He has an email from around April 19, 2018 confirming the block request.

I asked whether there were any other instances involving the Shoop trial where similar action was taken to block numbers. He stated there were, to his knowledge, two instances as described below: one involving a female suspected to be your paralegal, the other involving an alternate number to Glenn Osajima.

First, Investigator Treanor stated that, prior to trial, Investigator Beeman listened to a call from Shoop which was made to a female. During the course of the call, Investigator Beeman began to

Shoop. It is my view, and my supervisors concur, that, at least presently, it would not be appropriate for me to SDT these records from GTL.


Very Truly Yours,

Chris Alex
Deputy District Attorney



OFFICE OF THE
# DISTRICT ATTORNEY
ORANGE COUNTY, CALIFORNIA
TONY RACKAUCKAS

**JIM TANIZAKI**
CHIEF ASSISTANT D.A.

**JOSEPH D'AGOSTINO**
SENIOR ASSISTANT D.A.
GENERAL FELONIES/
ECONOMIC CRIMES

**MICHAEL LUBINSKI**
SENIOR ASSISTANT D.A.
SPECIAL PROJECTS

**JAIME COULTER**
SENIOR ASSISTANT D.A.
BRANCH COURT OPERATIONS

**SCOTT ZIDBECK**
SENIOR ASSISTANT D.A.
VERTICAL PROSECUTIONS/
VIOLENT CRIMES

CHIEF
BUREAU OF INVESTIGATION

**JENNY QIAN**
DIRECTOR
ADMINISTRATIVE SERVICES

**SUSAN KANG SCHROEDER**
CHIEF OF STAFF

December 7, 2018

To:     Mark Fredrick; Glenn Osajima
From:   Chris Alex
Re:     William Shoop

Mark. Please be advised of the following and please feel free to contact me
if you have any additional questions.

Glenn and I spoke over the telephone today. He confirmed he received a copy of the memo I
emailed you morning. Glenn stated that he has no recollection of anyone notifying him of a blocked
call or blocked number reference Todd Schneider.

Very Truly Yours,

Chris Alex
Deputy District Attorney

EXHIBIT B



**SHERIFF DEPARTMENT
ORANGE COUNTY
SANTA ANA, CALIFORNIA**

| JI# | TL011119/1106 |
|---|---|

Facility:   Theo Lacy Facility

DON BARNES, SHERIFF-CORONER                    RESPONSE TO INMATE / DETAINEE GRIEVANCE

## RESPONSE TO INMATE / DETAINEE GRIEVANCE

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL P 43 01 | Date Grievance Received | 01/11/2019 |
| Date / Time of Incident | 12/19/2018 12:00 PM | Location of Incident | |

Your Grievance has been assigned to Sergeant     Pusztai

### SYNOPSIS OF GRIEVANCE FILED

Inmate Shoop states he was informed by the OC District Attorney's Office from DDA Chris Alex that telephone call between him and his lawyer was recorded via the Global Tele-Link telephone service and listened to by Investigator Beeman from the Orange County Sheriff's Department.

### STAFF RESPONSE TO GRIEVANCE FILED

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

J192 (Rev. 02/11)

**INMATE / DETAINEE COPY**



**SHERIFF DEPARTMENT
ORANGE COUNTY
SANTA ANA, CALIFORNIA**

| JI# | TL011119/1107 |
|---|---|

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**                                    **RESPONSE TO INMATE / DETAINEE GRIEVANCE**

## RESPONSE TO INMATE / DETAINEE GRIEVANCE

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL  P  43  01 | Date Grievance Received | 01/11/2019 |
| Date / Time of Incident | 12/19/2018 12:00 PM | Location of Incident | |

Your Grievance has been assigned to Sergeant          Pusztai

### SYNOPSIS OF GRIEVANCE FILED

Inmate Shoop states he was informed by the OC District Attorney's Office from DDA Chris Alex that telephone call between him and his lawyer was recorded via the Global Tele-Link telephone service and listened to by an Investigator Treanor from the Orange County Sheriff's Department.

### STAFF RESPONSE TO GRIEVANCE FILED

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

J192 (Rev. 02/11)

## INMATE / DETAINEE COPY



| JI# | TL012619/1506 |
|---|---|

Facility:   Theo Lacy Facility

**SHERIFF DEPARTMENT
ORANGE COUNTY
SANTA ANA, CALIFORNIA**

**DON BARNES, SHERIFF-CORONER**                    **RESPONSE TO INMATE / DETAINEE GRIEVANCE**

---

## RESPONSE TO INMATE / DETAINEE GRIEVANCE

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL  P  43  01 | Date Grievance Received | 01/26/2019 |
| Date / Time of Incident | 01/25/2019 09:00 AM | Location of Incident | |

Your Grievance has been assigned to Sergeant            Pusztai

### SYNOPSIS OF GRIEVANCE FILED

Inmate Shoop was made aware by a subpoena the GTL phone service that OCSD personnel (James Owens) accessed and listened to several phone calls that had been placed to his attorney.

### STAFF RESPONSE TO GRIEVANCE FILED

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

J192 (Rev. 02/11)                          INMATE / DETAINEE COPY



|  | JI# | TL011119/1107 |
|---|---|---|

**SHERIFF DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**

**RESPONSE TO GRIEVANCE APPEAL**

## RESPONSE TO GRIEVANCE APPEAL

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL  P  43  01 | Date Appeal Received | 01/24/2019 |
| Date / Time of Incident | 12/19/2018 12:00 PM | Location of Incident | |

Your Grievance has been assigned to Lieutenant    Shirakawa

### SYNOPSIS OF GRIEVANCE APPEAL

Inmate Shoop states he was informed by the OC District Attorney's Office from DDA Chris Alex that telephone call between him and his lawyer was recorded via the Global Tele-Link telephone service and listened to by an Investigator Treanor from the Orange County Sheriff's Department.

### STAFF RESPONSE TO GRIEVANCE APPEAL

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

J194 (Rev. 02/11)

**INMATE / DETAINEE COPY**



| | JI# | TL011119/1106 |
|---|---|---|

**SHERIFF DEPARTMENT
ORANGE COUNTY
SANTA ANA, CALIFORNIA**

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**

**RESPONSE TO GRIEVANCE APPEAL**

## RESPONSE TO GRIEVANCE APPEAL

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL  P  43  01 | Date Appeal Received | 01/31/2019 |
| Date / Time of Incident | 12/19/2018 12:00 PM | Location of Incident | |

Your Grievance has been assigned to Lieutenant   Shirakawa

### SYNOPSIS OF GRIEVANCE APPEAL

Inmate Shoop states he was informed by the OC District Attorney's Office from DDA Chris Alex that telephone call between him and his lawyer was recorded via the Global Tele-Link telephone service and listened to by Investigator Beeman from the Orange County Sheriff's Department.

### STAFF RESPONSE TO GRIEVANCE APPEAL

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

**INMATE / DETAINEE COPY**



| JI# | TL012619/1506 |
|---|---|

**SHERIFF DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**

**RESPONSE TO GRIEVANCE APPEAL**

---

### RESPONSE TO GRIEVANCE APPEAL

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL_P_43_01 | Date Appeal Received | 01/31/2019 |
| Date / Time of Incident | 01/25/2019 09:00 AM | Location of Incident | |

Your Grievance has been assigned to Lieutenant   Shirakawa

#### SYNOPSIS OF GRIEVANCE APPEAL

Inmate Shoop was made aware by a subpoena the GTL phone service that OCSD personnel (James Owens) accessed and listened to several phone calls that had been placed to his attorney.

#### STAFF RESPONSE TO GRIEVANCE APPEAL

This incident is being address through the Orange County District Attorney's and through your court proceedings.  You have been issued a court order for non-collect phone calls to your attorney and/or investigator that are completed on a non-recorded telephone line that is not serviced through Global Tele-Link to address this situation.

J194 (Rev. 02/11)

**INMATE / DETAINEE COPY**

EXHIBIT   C



| JI# | TL011119/1107 |
|---|---|

**SHERIFF DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**

**RESPONSE TO FINAL GRIEVANCE APPEAL**

---

## RESPONSE TO FINAL GRIEVANCE APPEAL

Inmate's Name   SHOOP, WILLIAM      Booking Number   2948958

Housing Location   TL P 43 01      Date Appeal Received   02/06/2019

Date / Time of Incident   12/19/2018 12:00 PM      Location of incident

Your Final Grievance has been assigned to Facility Commander   South

### SYNOPSIS OF FINAL GRIEVANCE APPEAL

Inmate Shoop states that regardless of the fact this incident is being addressed in court it should still be handled as a grievance.

### FACILITY COMMANDER'S RESPONSE TO FINAL GRIEVANCE APPEAL

As previously stated by Sgt. Pusztai and Lt. Shirakawa this issue is being handled through your court proceedings. You are currently receiving your non-collect phone calls to your attorney and/or investigator on a non-recorded telephone line.  This has exhausted your appeals process on this issue.

---

J196 (Rev. 02/11)

**INMATE / DETAINEE COPY**



**SHERIFF DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

| JI# | TL012619/1506 |
|-----|---------------|

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**                          **RESPONSE TO FINAL GRIEVANCE APPEAL**

## RESPONSE TO FINAL GRIEVANCE APPEAL

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL P 43 01 | Date Appeal Received | 02/06/2019 |
| Date / Time of Incident | 01/25/2019 09:00 AM | Location of Incident | |

Your Final Grievance has been assigned to Facility Commander    South

### SYNOPSIS OF FINAL GRIEVANCE APPEAL

Inmate Shoop states that regardless of the fact this incident is being addressed in court it should still be handled as a grievance.

### FACILITY COMMANDER'S RESPONSE TO FINAL GRIEVANCE APPEAL

As previously stated by Sgt. Pusztai and Lt. Shirakawa this issue is being handled through your court proceedings. You are currently receiving your non-collect phone calls to your attorney and/or investigator on a non-recorded telephone line.  This has exhausted your appeals process on this issue.

J196 (Rev. 02/11)                    **INMATE / DETAINEE COPY**



| | | JI# | TL011119/1106 |

**SHERIFF DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

Facility:   Theo Lacy Facility

**DON BARNES, SHERIFF-CORONER**

**RESPONSE TO FINAL GRIEVANCE APPEAL**

---

## RESPONSE TO FINAL GRIEVANCE APPEAL

| | | | |
|---|---|---|---|
| Inmate's Name | SHOOP, WILLIAM | Booking Number | 2948958 |
| Housing Location | TL P 43 01 | Date Appeal Received | 02/06/2019 |
| Date / Time of Incident | 12/19/2018 12:00 PM | Location of Incident | |

Your Final Grievance has been assigned to Facility Commander      South

### SYNOPSIS OF FINAL GRIEVANCE APPEAL

Inmate Shoop states that regardless of the fact this incident is being addressed in court it should still be handled as a grievance.

### FACILITY COMMANDER'S RESPONSE TO FINAL GRIEVANCE APPEAL

As previously stated by Sgt. Pusztai and Lt. Shirakawa this issue is being handled through your court proceedings. You are currently receiving your non-collect phone calls to your attorney and/or investigator on a non-recorded telephone line.  This has exhausted your appeals process on this issue.

J196 (Rev. 02/11)

**INMATE / DETAINEE COPY**

EXHIBIT E

JI# ☒ N/A



# SHERIFF DEPARTMENT
# ORANGE COUNTY
# SANTA ANA, CALIFORNIA

SANDRA HUTCHENS, SHERIFF - CORONER

## GRIEVANCE / GRIEVANCE APPEAL FORM
(Circle One)

Inmate's Name ___William Shoop___     Booking Number ___2948958___
Housing Location ___P-113-1___     Date ___2·17·19___
Date of Incident ___2.15.19___   Time of Incident ___12:00___   Location of Incident ___O.C. Jail___
Is grievance related to a disability?   Yes   (No)   (Circle one)

### Details of Incident (One Incident Per Form. Include dates, times, and names of those involved.)
### Details should be brief and contained in this area

I HAVE BEEN MADE AWARE BY COURT DOCUMENTS THAT O.C.S.D. PERSONNEL BLAKE
BLANEY, DANIEL SOLIS, EMAD MITRY, ERIC GUMMIO, JACOB BIEKER, JEFFERY JENSEN,
JOSEPH FIKENS, JUSTIN MENESE, NARINEH MEHRADIAN, AND SAMUEL OKADE WERE
AWARE THAT PRIVILEDGE COMMUNICATIONS WERE BEING IMPROPERLY RECORDED ALLOWING
INVESTIGATIVE ACCESS (BECAUSE THEY THEMSELVES HAD ACCESSED PRIVILEDGED COMMUNICATIONS
OTHER THEN MINE) AND WERE NEGLIGENT WHILE ACTING UNDER THE COLOR OF LAW
IN THAT THEY DIDN'T ALERT A SUPERVISOR OR TRY AND FIX THE PROBLEM. INSTEAD
CONSPIRING BY ACT OR OMISSION TO ALLOW FURTHER IMPROPER RECORDINGS AND
INVESTIGATIVE ACCESS WHICH LEAD TO THE ACCESS OF MY OWN PRIVILEDGE
COMMUNICATIONS. IT IS THE AFFIRMATIVE OBLIGATION OF THESE SWORN OFFICERS
TO UP HOLD MY CONSTITUTIONAL RIGHTS. INSTEAD THEY CONSPIRED TO DO THE
OPPOSITE. I WISH TO HAVE A J.I.# ASSIGNED AND TO EXHAUST MY REMEDY
ON THAT J.I.# AS MY ATTORNEY HAS INSTRUCTED ME TO DO SO.
                                              Thank You

### STAFF RESPONSE

Your REQUESTED JI(S) ARE AS FOLLOWS:

TLO11119/1105
TLO11119/1107
TLO12619/1506

Inmate Signature ___W. Shoop___   Date ___2·17·19___   Time ___12:00___
Received By ___SGT RUFFONG___   Date ___02-15-19___   Time ___0850___
                 Staff Name & PID # (Please Print)
Assigned To ___SGT RUFFONG___   Date ___02-18-19___
Response Returned to Inmate By ___SGT RUFFONG___   Date ___02-19-19___
☑ Handled as Inmate Request

### Do not write below this line.  For official use only.

Copies (JI# Only)
1. Original scanned to Grievance Program.
2. Photo copy to inmate after signing (attesting to receiving form).
3. Photo copy to inmate when returning response.
4. Original to Jail Inmate Record File

☐ Grievance              ☐ Intake/Release Center
☐ Appeal Grievance       ☐ Central Men's Jail
☐ Inmate Services        ☐ Central Women's Jail
☐ Personnel Complaint    ☐ James A. Musick
☐ Medical                ☐ Theo Lacy Facility
☐ Appeal Discipline

J190 (Rev. 02/11)







WILLIAM SHOOP
#2948958
Socton For The Gifted (p. 43.1)
501 The City Dr. South
Orange Ca. 92868

CV

MAY 16 2019
CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY JAIL
THEO LACY FACILITY
INMATE MAIL

LEGAL MAIL
2 of 2

ATTENTION: Pro Se Clerk
United States District Court
Central District of California
312 North Spring Street, Room G-8
Los Angeles, Ca. 90012

